**IN THE COURT OF APPEALS OF IOWA**

No. 15-1791
Filed December 23, 2015

**IN THE INTEREST OF D.B. and G.B.,**
     **Minor Children,**

**A.D., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

     A mother of two young children appeals the termination of her parental rights.  **AFFIRMED.**

     Raya Dimitrova, Carr & Wright, P.L.C., Des Moines, for appellant.

     Thomas J. Miller, Attorney General, and Kathryn S. Miller-Todd, Assistant Attorney General, for appellee.

     Brent Pattison of Drake Legal Clinic, attorney and guardian ad litem for minor children.

     Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A mother, who admits intravenous opiate abuse, appeals the termination of her parental rights to her two young sons, D.B. and G.B. She asks to extend placement for an additional six-months so that she can attend to her addiction. She also claims termination was not in the children's best interest.

We find additional time is not warranted because the record does not show the mother will be able to safely parent these children after six more months. We also agree with the juvenile court that the children's interests are best served by allowing them to move toward adoption by their maternal grandfather.

## I. Background Facts and Proceedings

G.B. tested positive for opiates and oxycodone when he was born in July 2014. His mother admitted using non-prescribed Vicodin during her pregnancy. The father also acknowledged an opiate addiction. The Iowa Department of Human Service (DHS) created a safety plan under which both parents agreed to participate in substance abuse treatment. But the parents did not follow through with voluntary services. In December 2014, DHS sought removal of G.B. and his older brother D.B., who was born in April 2013. DHS placed the young brothers with their maternal grandfather and his fiancée.

On February 4, 2015, the juvenile court adjudicated G.B. and D.B. as children in need of assistance (CINA). The court continued the placement with the grandfather, and the children have remained in his home through the course of these proceedings. The mother agrees the children are safe and happy there;

the grandfather and his fiancée have expressed their willingness to adopt G.B. and D.B.

The twenty-four-year-old mother's unabated addiction loomed as the primary reason she was unable to care for G.B. and D.B. She testified to experimenting with various drugs in her late teens and early twenties, before becoming addicted to IV opiates during her relationship with the children's father. Since the children's removal in December 2014, the mother tried several times to undergo substance abuse treatment, including entering two inpatient facilities, but she left against medical advice each time. The mother also was arrested three times for drug-related offenses during the course of the CINA case. She testified she last used opiates just two days before the first day of the termination hearing.

The mother's interactions with her sons were generally positive, but she did not take advantage of the visitation opportunities offered by the DHS. Following their removal, the mother had supervised visitation twice per week for ninety-minute sessions. She also had weekend visitation supervised by her father. The mother was engaged and attentive, and the children were happy to see her. Given her progress, the DHS allowed the mother to visit the children at daycare. But she did not go to their daycare. She eventually stopped attending weekend visitation, as well. The mother continued her mid-week visits when not incarcerated.

In June 2015, the State filed a petition to terminate parental rights. The juvenile court held a two-day termination hearing on August 7 and September 30,

2015. On the first day of the hearing, the mother testified she was not currently being treated for her addiction, but intended to "get into inpatient treatment." She asked for a six-month extension to reunify with her children.

Before the second day of the hearing in September, the mother had been arrested on a charge stemming from her illegal use of prescription drugs. The DHS reported to the court that the mother had had no contact with the DHS since she informed her social worker she was in jail on September 1, 2015. The juvenile court terminated the mother's parental rights in an order issued on October 8, 2015.[1] The mother challenges that order on appeal.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We are not bound by the juvenile court's findings of fact, but we give them weight, particularly when assessing witness credibility. *Id.* We will uphold an order severing the parent-child relationship if the record contains clear and convincing evidence to support the grounds for termination under Iowa Code section 232.116(1). *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

## III. Analysis

The juvenile court relied, in part, on Iowa Code section 232.116(1)(h) (2015) when terminating the mother's parental rights. That subsection requires

---

[1] The juvenile court also terminated the father's parental rights, but he is not a party to this appeal.

proof the children are three years of age or younger; have been adjudicated CINA; have been removed from the parent's physical custody for at least six months of the last twelve months; and cannot be returned to the parent's custody "at the present time." Iowa Code § 232.116(1)(h). We find clear and convincing evidence to support that decision.

The record shows the mother was unable to resume custody of the children at the time of the termination hearing, and, in fact, she did not ask for that result. Rather, her only request at the hearing was for a six-month extension so that she could start substance abuse treatment. On appeal, she argues the juvenile court erred in terminating her rights under paragraph (h), but she does not really contest the grounds for termination. Instead she seeks additional time for reunification under Iowa Code section 232.104(2)(b).[2]

To extend placement for six months, the statute requires the court to make a determination the cause for removal will be remedied at the end of the extension. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The district court was unable to make such a finding here, explaining that a return to their mother "at this time or in the foreseeable future" would subject D.B. and G.B. to "great instability and uncertainty." The court found "[t]here has not been resolution to the concerns raised at the time of the children's removals."

---

[2] Iowa Code section 232.104(2)(b) allows a juvenile court to
> [e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

Iowa courts look skeptically at "last-minute" attempts to address long-standing issues, finding them inadequate to preclude termination of parental rights. *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Here the mother did not even act at the eleventh hour. This mother continued to abuse IV opiates up until the time of the termination hearing. She was unsuccessful in previous efforts at inpatient treatment and was not enrolled in any program at the time of the hearing. By the time of the second day of the hearing, she had been arrested, jailed and lost contact with the DHS. On appeal she cites "her willingness to engage in substance abuse treatment." But according to the testimony of the social worker, it would be unreasonable to expect the mother to be ready to resume custody of the children in six months. We agree with the juvenile court's decision not to delay permanency.

The mother also asserts termination was not in children's best interest. She argues a six-month extension would not be detrimental to the children because they are doing well in placement with their grandfather.

In considering the children's best interest, we give primary consideration to their safety; the best placement for furthering their long-term nurturing and growth; and to their physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2). During the CINA case, the mother did not show progress toward resolving her addiction. She did not move beyond supervised visitation. She acknowledged the children were safe with their grandfather and that he was attending to their physical and emotional needs. Given the uncertainty of the mother's commitment to obtaining substance abuse treatment,

and the grandfather's willingness to adopt D.B. and G.B., we find that termination was in the children's best interests under section 232.116(2).

Finally, the mother argues it would be detrimental to the children to cut off their close, loving relationship with her. *See* Iowa Code § 232.116(3)(c). Section 232.116(3) is a permissive basis for foregoing termination; the finding of a bond does not mandate that the petition for termination be denied. *See A.M.*, 843 N.W.2d at 113. The mother's bond with her sons does not outweigh the safety risk of returning them to her care or their need for stability and permanency. We agree with the district court's decision to go forward the termination here.

**AFFIRMED.**